UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff and** | ) | No. 2:11-cv-00127-BLW |
| **Counterclaim-Defendant,** | ) | |
| | ) | |
| v. | ) | STIPULATION AND |
| | ) | ORDER |
| **FEDERAL RESOURCES CORP.,** | ) | RE: SEQUESTRATION |
| **BLUM REAL ESTATE TRUST;** | ) | OF FUNDS AND RE |
| **BENTLEY J. BLUM, in his** | ) | ESTABLISHMENT OF |
| **capacity as Trustee of the Blum** | ) | COURT REGISTRY ACCOUNT |
| **Real Estate Trust** | ) | |
| | ) | |
| **Defendants and** | ) | |
| **Counterclaimant.** | ) | |

Federal Resources Corporation, the Blum Real Estate Trust, Bentley J. Blum, and Camp Bird Colorado, Inc. (collectively, Defendants), Caldera Mineral Resources, LLC, (Caldera), Caldera Holdings, LLC (Holdings), and the United States of America (United States) respectfully submit this Stipulation and Proposed Order re: Sequestration of Funds settling and resolving any objections Defendants, Caldera, and Holdings may have to the Writ of Sequestration issued by the Court (CM/ECF # 157), and resolving Caldera and Holdings' Motion to Intervene (CM/ECF # 161).

## BACKGROUND

In support of the Stipulation, the Defendants, Caldera, Holdings and the United States submit the following facts:

### TRANSFERS TO CALDERA & HOLDINGS

1. Camp Bird Colorado, Inc. (CBCI) is the present title owner of the Camp Bird Mine (Camp Bird), located in Ouray and San Miguel Counties, Colorado, including all real property, mineral rights, and water rights.

2. Commencing in June 2012, CBCI entered into a series of agreements transferring certain rights and assets in Camp Bird.

3. In June 2012, CBCI entered into a Memorandum of Understanding (MOU) with Copper King Mining Corporation regarding the transfer of certain rights and assets. The MOU had an effective date of June 22, 2012.

4. On or about August 6, 2012, Copper King Mining Corporation assigned its rights under the MOU to Caldera (Assignment).

5. By "Mining Lease and Option to Purchase" (Lease Option) dated September 20, 2012, CBCI entered into an agreement with Caldera whereby Caldera acquired rights in Camp Bird, including lease rights and two options to purchase ownership interests in Camp Bird.

6. On September 20, 2012, CBCI, Camp Bird Tunnel, Mining and Transportation Company (TMTC), Caldera, and Holdings entered into a Non-Recourse Guarantee and Security Agreement (Guarantee Agreement) whereby Caldera and Holdings obtained a claim for repayment of costs advanced at Camp Bird to facilitate exploration, development and mining operations, to acquire interests in Camp Bird, and other repayment obligations from CBCI and TMTC (Recoupable Costs).

7. On September 20, 2012, CBCI and TMTC granted a deed of trust in Camp Bird, and certain other rights, in favor of Holdings (Deed of Trust) to secure the repayment obligations under the Guarantee Agreement.

8. On September 20, 2012, CBCI entered into a letter agreement granting Caldera

rights to remove and process tailings (Tailings Letter).

9. On September 20, 2012, CBCI executed with Caldera a Reservation of Perpetual Gross Royalty instrument (Royalty Reservation) in furtherance of the terms of the Lease Option.

10. On September 20, 2012, CBCI and TMTC granted an Irrevocable License for Use of Water (Water License) to Caldera.

11. On September 20, 2012, CHH Operating Corp. (CHH), a California corporation, and Holdings entered into a Subordination Agreement (Subordination Agreement) whereby CHH subordinated its mortgage in Camp Bird to the Deed of Trust in favor of Holdings.  The Subordination Agreement, MOU, Assignment, Lease Option, Guarantee Agreement, Deed of Trust, Tailings Letter, Royalty Reservation, and Water License shall be referred to collectively in this Stipulation as the "Caldera Agreements."

12. CBCI's transfers to Caldera and Holdings through the Caldera Agreements are hereinafter referred to collectively as the "Transfers."

13. Caldera and Holdings assert that they were unaware of the above captioned proceeding or the claims asserted by the United States (collectively, Case) prior to the Agreements, and did not learn of the Case until January 16, 2013.

14. On and after September 20, 2012, Caldera and Holdings began expending Recoupable Costs including transferring $600,000 to CBCI, building, repairing, restoring infrastructure, and other expenses.

## LEASE OPTION – FIRST OPTION

15. Under § 17 of the Lease Option, Caldera holds an option (First Option) to purchase an undivided 60 percent interest in Camp Bird from CBCI.  "Mining Claims," as used in the Lease Option, is expressly defined to include all real property, mineral rights, and water

rights in Camp Bird.  Lease Option, § 1(c) & (e).

16. In order to exercise the First Option, Caldera must provide notice (<u>Notice</u>) to CBCI in accordance with the Lease Option of Caldera's intent to exercise the First Option on or before March 19, 2013.  Lease Option, § 17(a).

17. Caldera provided the Notice to CBCI on March 19, 2013.

18. The purchase price for the First Option is $6.5 million (<u>JV Price</u>).

19. To exercise the First Option, on or before the thirtieth day following delivery of the Notice, i.e., April 18, 2013, Caldera must deliver to an escrow agent (<u>Escrow Agent</u>) selected by Caldera and acceptable to CBCI the JV Price and an executed copy of the Joint Venture Agreement attached to the Lease Option as Exhibit D (<u>JV Agreement</u>).  Lease Option, § 17(a). The JV Agreement is hereinafter incorporated into the definition of the "<u>Caldera Agreements</u>."

20. To comply with its obligations under the Lease Option and the First Option, after receiving the Notice from Caldera, CBCI must deliver to the Escrow Agent an executed copy of the JV Agreement and a duly executed and notarized Special Warranty Deed in a form reasonably satisfactory to Caldera.  Lease Option, § 17(a).

21. Under the Lease Option, upon full delivery to the Escrow Agent by both Caldera and CBCI of their requirements under the First Option, the Escrow Agent may begin releasing funds from the escrow (<u>Option Escrow</u>).  The Escrow Agent is obligated to pay from the JV Price the amount necessary to release any liens made or suffered by CBCI prior to September 20, 2012, or any liens made or suffered by CBCI without the permission of Caldera (<u>Encumbrances</u>). Lease Option, § 17(b).  Under the Lease Option, following payment of the Encumbrances, the Escrow Agent may release the balance of the JV Price (<u>Net Payment</u>) to CBCI.

22. Caldera and CBCI have identified only the following Encumbrances that must be

paid or removed upon Caldera's execution of the First Option:

    a.    Dufford & Brown: deed of trust/lien in the approximate amount of $190,000;

    b.    JJR Trust: deed of trust in the approximate amount of $36,000;

    c.    Federal Tax Liens from 2006 in the approximate total amount of $27,000;

    d.    Transcript of Judgment (<u>Transcript</u>) in favor of Ouray County in the approximate amount of $9,700;

    e.    CBCI's grant of a royalty interest to Federal Resources Corporation (<u>FRC Royalty</u>) made as of June 3, 1983.

23.    Caldera and Holdings assert that the Grant of Royalty made as of June 3, 1983, between CBCI as grantor and Federal Resources as grantee presently prevents CBCI from delivering a Special Warranty Deed to Caldera to satisfy CBCI's obligations under the First Option.

24.    Caldera and Holdings assert that the Writ of Sequestration issued by the Court in this Case and the claims of the United States (<u>U.S. Claims</u>) to avoid CBCI's title in Camp Bird presently prevent CBCI from delivering a Special Warranty Deed to Caldera to satisfy CBCI's obligations under the First Option.

## JV AGREEMENT – SECOND OPTION

25.    Execution and full performance of the First Option triggers Caldera's right to exercise a second option (<u>Second Option</u>) under the JV Agreement.

26.    The Second Option provides that Caldera may purchase up to an additional undivided 15 percent interest in Camp Bird from CBCI, or any lesser amount. JV Agreement, § 6.2.

27. If Caldera exercises the Second Option on or prior to June 22, 2013, the price is $4,150,000 for the entire additional undivided 15 percent in Camp Bird, or a pro rata amount for any lesser percentage.

28. If Caldera exercises the Second Option after June 22, 2013, but before June 22, 2014, the price is $6,650,000 for the entire additional undivided 15 percent in Camp Bird, or a pro rata amount for any lesser percentage.

29. The Second Option expires after June 22, 2014.

30. Under the Caldera Agreements, other financial payments may become due and owing to CBCI.

## PROCEDURAL HISTORY OF THE CASE

31. The United States commenced the Case on March 29, 2011.

32. The United States seeks reimbursement of response costs pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) against Federal Resources Corporation (FRC) for cleanup costs related to the Conjecture Mine Site and the Minnie Moore Mine Site in Idaho.

33. On March 14, 2013, this Court issued an Order granting the United States' Application for Writ of Sequestration. The Writ of Sequestration provides that any and all income, proceeds, or consideration from the lease or sale of the Camp Bird Mine shall be sequestered in a Court Registry Account in an amount not to exceed $5,931,255.71.

34. On March 19, 2013, Caldera filed a Motion to Intervene in this lawsuit.

## TERMS OF STIPULATION

The United States, Defendants, Caldera and Holdings hereby Stipulate as follows:

(1) Attached to this Stipulation as Exhibit A is a Proposed Order to Establish a Court

Registry Account ("Registry Order") to receive and distribute funds pursuant to this Stipulation. The purpose of the Court Registry Account is to ensure that, consistent with the Writ of Sequestration, funds in the amount of $5,931,255.71, together with any interest that accrues thereon (Court Registry Amount), are available to satisfy any judgment the United States obtains against FRC in this lawsuit. The United States, Defendants, Caldera and Holdings hereby jointly request the Court to issue the Registry Order concurrently with approving this Stipulation;

(2) By April 18, 2013, Caldera shall select the Escrow Agent for the First Option (<u>Option Escrow</u>).

(3) By May 10, 2013, or by the close of business two business days after issuance and entry of an Order approving this Stipulation, together with issuance and entry of the Registry Order, whichever date is later (<u>Delivery Date</u>), Caldera shall deliver to Escrow Agent the executed JV Agreement and the JV Price. By the Delivery Date, CBCI shall deliver to Escrow Agent the executed JV Agreement, all documents necessary to release and pay the Encumbrances, a fully executed copy of this Stipulation, the Court's Order approving this Stipulation, the Registry Order, an original, fully executed Special Warranty Deed (in a form reasonably satisfactory to Caldera), and disbursement instructions in a form acceptable to Caldera and CBCI (collectively, all items hereinafter the "<u>Closing Items</u>").

(4) On the Delivery Date, Caldera and CBCI shall direct the Escrow Agent to close the First Option transaction (<u>Closing</u>). Caldera and CBCI shall direct the Escrow Agent to pay and/or remove only the following Encumbrances before any additional funds may be released:

    a. Dufford & Brown: deed of trust/lien in the approximate amount of $190,000;

    b. JJR Trust: deed of trust in the approximate amount of $36,000;

    c. Federal Tax Liens from 2006 in the approximate total amount of $27,000;

    d. Transcript of Judgment (Transcript) in favor of Ouray County in the approximate amount of $9,700;

    e. CBCI's grant of a royalty interest to Federal Resources Corporation (FRC Royalty) made as of June 3, 1983.

(5) CBCI agrees to remove the JJR Trust Encumbrance without payment of any amount by the Escrow Agent and to cause FRC to release the FRC Royalty by conveying it back to CBCI. The United States hereby affirms that it does not object to FRC's conveyance of the FRC Royalty to CBCI.

(6) Caldera and CBCI agree that the Dufford & Brown, Federal Tax Liens, and Transcript Encumbrances shall be removed by payment from the Escrow Agent from the JV Price. The amount necessary to satisfy these Encumbrances has not yet been determined, and changes daily as interest accrues. CBCI shall obtain payoff statements from the holders of the Encumbrances and submit such payoff statements to the Escrow Agent prior to the Delivery Date, with per diem amounts included for accruing daily interest, to enable the Encumbrances to be satisfied at the Closing.

(7) Caldera and CBCI shall direct the Escrow Agent that upon receipt of the Closing Items, the Escrow Agent shall promptly record the Special Warranty Deed and deliver the recorded Special Warranty Deed and the JV Agreement executed by CBCI to Caldera. Caldera and CBCI shall direct the Escrow Agent to further make all

payments from the JV Price necessary to fully satisfy and release the Encumbrances identified in Paragraph 4 above, as modified by Paragraphs 5 and 6 above.

(8) Defendants, Caldera and Holdings agree that other than the Encumbrances identified in Paragraph 4, as modified by Paragraphs 5 and 6 above, no other deductions shall be made from the JV Price prior to the $4.75 million payment to the Court Registry provided for in the next paragraph.

(9) Caldera and Holdings shall direct the Escrow Agent to deliver the balance of the JV Price, less all amounts necessary to satisfy the Encumbrances identified in Paragraph 4, as modified by Paragraphs 5 and 6 above (Net Funds), as follows:

   a. The first $4.75 million of the Net Funds to the Court Registry Account.

   b. The balance of Net Funds per disbursement instructions mutually agreeable to Caldera, CBCI, and Escrow Agent.

(10) If Caldera exercises the Second Option, or if Caldera is obligated to make any other payments to CBCI, including any royalty payments, Caldera shall pay all payments into the Court Registry Account.

(11) The total payments of principal into the Court Registry Account shall not exceed $5,931,255.71.

(12) All monies deposited into the Court Registry Account pursuant to this Stipulation shall remain on deposit in the Court Registry Account and disbursed therefrom in accordance with the terms of this Stipulation.  All interest that accrues on the funds in the Court Registry Account shall remain in the Court Registry Account and shall be available for payment of any judgment the United States obtains against FRC in this lawsuit.  The Court shall order the disbursement of funds only as provided in this

   Stipulation.

(13) Fifteen days following the issuance of a Judgment against FRC by this Court in the instant litigation, the United States may file a Motion requesting the release of funds in the Court Registry Account to the United States.  The Court shall order the delivery to the United States the amount set forth in the Judgment.  The Parties recognize that due to the fact that the United States asserts that its recoverable response costs include ongoing and future costs, the initial judgment issued by this Court may not fully resolve all the United States' claims. Hence, the Court may not disburse any remaining balance to Defendants until the United States provides a written assertion that it has no further claims it may make.  Once that written assertion has been provided to the Court, the remainder, if any, shall be delivered to CBCI.  In the event Defendants appeal any judgment issued by this Court, the Defendants may attempt to obtain a supersedeas bond for that appeal.  The issuance of a supersedeas bond shall stay any disbursement from the Court Registry Account. Within thirty days of Defendants providing notice to the United States that they obtained a supersedeas bond, the United States shall present an estimate of response costs incurred for the Minnie Moore or Conjecture Sites or incurred in this matter, that were not previously presented to the Court (including ongoing costs, future costs and potential future interest).  Following receipt of that estimate, CBCI may file a Motion, attaching the supersedeas bond and the United States' estimate, and seek disbursements from the Court Registry Account of all monies in the Court Registy Account that exceed the amount of the United States' estimate of costs not previously presented to the Court.   The remainder shall be disbursed to CBCI.

(14) Alternatively, if the United States and the Defendants resolve the instant litigation, upon presentation of a Consent Decree approved by this Court, the Court shall order the delivery to the United States the amount set forth in the Consent Decree from the Court Registry Account. Payment shall be paid to the United States subject to the terms of that Consent Decree. The remainder, if any, shall be delivered to CBCI.

(15) CBCI shall grant to the United States a deed of trust on CBCI's interest in Camp Bird equal to $5,931,255.71, less any monies paid to the Court Registry Account for all of CBCI's real property and interests covered by the Caldera Agreements (<u>U.S. Deed of Trust</u>). The form of the U.S. Deed of Trust will be agreed upon by the United States, Defendants, Caldera and Holdings. If agreement cannot be reached, the matter will be resolved by the Court. The U.S. Deed of Trust shall be deemed to have been granted the later of: the Court's Order approving this Stipulation and entry of Order on the Docket, or, the final form of the U.S. Deed of Trust is either agreed upon by the United States, Defendants, Caldera and Holdings or determined by the Court. The U.S. Deed of Trust shall be subject only to (i) Caldera's ownership rights due to payment of the JV Price; (ii) the Deed of Trust held by Holdings; (iii) the Lease Option and JV Agreement, including Caldera's Second Option rights; and (iv) inchoate liens for taxes assessed but not yet due and payable. Such U.S. Deed of Trust shall not attach to or encumber any interest of Caldera or Holdings, including any interests acquired through the First Option or Second Option. Such U.S. Deed of Trust shall be immediately and automatically dissolved and shall be forthwith released by the United States, upon delivery of sufficient payments to the Court

Registry Account to satisfy the full Court Registry Amount. The United States agrees, from time to time, upon request of the Defendants or Caldera, to promptly execute and deliver such further instruments as Defendants, Caldera, or Holdings may reasonably request to effectuate the intent of this Paragraph. The U.S. shall not record the Deed of Trust until after the Escrow Agent records the Special Warranty Deed at Closing.

(16) Immediately and automatically upon the Court's Order approving this Stipulation and entry of such Order on the Docket, Defendants shall be deemed to have granted and delivered a security interest in $4,750,000 of the Net Funds, plus all additional amounts from exercise of the Second Option under the JV Agreement, or other financial payments due and owing to CBCI from Caldera under the Caldera Agreements, up to an aggregate of $5,931,255.71 (collectively, "Lien Funds"), so that the United States may perfect a first lien and security interest in such Lien Funds. Thereupon the United States shall be then authorized to record a Uniform Commercial Code (UCC) 1 financing statement in the appropriate records for such financing statements. This Stipulation shall serve as a security agreement for purposes of Article 9 of the Uniform Commercial Code. Defendants hereby grant a security interest in favor of the United States, relinquish the right to control the Lien Funds from the Caldera Agreements, and grant the United States the right to direct the disposition of the Lien Funds in accordance with the terms of the Stipulation and the Court Registry Order.

(17) It is the goal of the United States, Defendants, Caldera, and Holdings that the United States' Deed of Trust and the security interests in the Lien Funds are properly

created and perfected. If the United States concludes that any additional actions or documents are necessary to create or perfect those interests, Defendants, Caldera and Holdings agree to promptly execute and deliver such further instruments as the United States may reasonably request to effectuate the intent of this Paragraph.

(18)   Caldera hereby irrevocably and unconditionally waives any and all claims it has or may have against any funds deposited in the Court Registry Account unless and until such funds are subsequently obtained by CBCI or Defendants. Nothing herein affects in any way Caldera's rights and claims against CBCI under the Agreements.

(19)   Other than as set forth in this Stipulation, Defendants hereby waive all claims they have or may have against any funds in the Court Registry Account.

(20)   Defendants, Caldera, and Holdings recognize that the United States is entering into this Stipulation based on the existing terms and conditions of the Caldera Agreements. Defendants, Caldera, and Holdings hereby agree that they will not enter into any amendments to the Caldera Agreements without receiving agreement from the United States that such changes do not prejudice the rights of the United States in the Case.

(21)   The signed guarantees of Bentley J. Blum, Camp Bird Colorado, Inc., and the Blum Real Estate Trust are attached hereto as Exhibits B, C and D. These guarantees are, initially, in the amount of $5,931,255.71 and are incorporated as part of this Stipulation and enforceable as part of this civil action in this Court. The guarantees shall be effective upon the approval of this Stipulation by the Court. However, if Caldera exercises the Second Option, and a total of $5,931,255.71 has been paid into the Court Registry Account, the $5,931,255.71 initial limitation of the guarantees

shall be eliminated and the guarantees shall be for the full amount of any judgments entered against FRC. Upon notification that the Second Option has been exercised and a total of $5,931,255.71 has been paid into the Court Registry Account, and, hence, that the $5,931,255.71 initial limitation has been eliminated, the United States agrees to file a motion to amend its pleadings and withdraw all claims asserted in this litigation against Bentley J. Blum, CBCI, and the Blum Real Estate Trust to the extent that such claims are covered by the liability established in the Stipulation.

(22)   If any of the provisions of this Stipulation conflict with the Caldera Agreements or any other agreement between Defendants and Caldera and/or Holdings, this Stipulation shall govern.

(23)   The United States hereby agrees that upon approval of this Stipulation by the Court, together with issuance of the Registry Order, it shall not assert any civil claims against Caldera or Holdings related to the Transfers, or against any rights transferred to Caldera or Holdings through the Caldera Agreements, related to any claims asserted against Defendants, or arising out of the claims in this Case.

(24)   Upon approval of this Stipulation by the Court, together with issuance of the Registry Order, Caldera will withdraw its Motion to Intervene in this lawsuit. This Stipulation resolves any and all challenges Defendants, Caldera or Holdings may have with respect to the Writ of Sequestration issued by the Court on March 14, 2013. Otherwise, this Stipulation is without prejudice to all other claims and defenses the parties may have or may bring in this action and nothing in this Stipulation shall constitute or be deemed an admission by the Defendants.

(25)   Upon approval of this Stipulation by the Court, together with issuance of the

Registry Order, the Parties respectfully request that the Court issue an Order vacating the Writ of Sequestration issued by the Court on March 14, 2013.

(26)   The undersigned hereby certify that they are authorized to enter into this Stipulation on behalf of the Parties.

(27)   This Court will retain jurisdiction over any matters relating to this Stipulation and the attached Exhibits.  The United States, Defendants, Caldera, and Holdings hereby stipulate that Defendants, Caldera, and Holdings shall be subject to the jurisdiction of this Court for the purpose of this Stipulation.

SO ORDERED,

DATED: April 25, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court