UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>FEDERAL RESOURCES<br>CORPORATION; BENTLEY J. BLUM<br>personally and in his capacity at Trustee<br>of the BLUM REAL ESTATE TRUST;<br>and CAMP BIRD COLORADO, INC.,<br><br>               Defendants. | Case No. 2:11-cv-00127-RCT-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Before the Court is judgment debtor Bentley Blum's application for hearing to determine whether a parcel of real property is exempt from execution. (Dkt. 390, 391.) The Court conducted a hearing on July 28, 2015, at which counsel for both parties appeared. After carefully reviewing the parties' submissions, relevant authorities, and oral argument, the Court issues this report recommending that Blum's motion be denied on the grounds that it is not ripe for adjudication.

# BACKGROUND

On July 14, 2014, the Court entered summary judgment in favor of the United States on its CERCLA claims. *United States v. Fed. Res. Corp.*, 30 5 F. Supp. 3d 979 (D. Idaho 2014). The Court allowed the Government to pierce the corporate veil of Federal Resources Corporation ("FRC") to hold Bentley J. Blum ("Blum") individually liable. *Id.* at 1001. On January 12, 2015, the Court entered final judgment as to all parties in the amount of $4,406,340.66, but stayed enforcement of the judgment as against FRC and Camp Bird Colorado, Inc. ("CBCI") because they had filed for bankruptcy. *United States v. Fed. Res. Corp.*, 11 525 B.R. 759, 767 (D. Idaho 2015). The Government began enforcement proceedings against Blum and the Blum Real Estate Trust, which are the subject of Blum's motion presently before the Court. *See, e.g.*, Dkt. No. 371, 372.[1]

The United States obtained a certified abstract of the judgment signed by the clerk of the Court on January 29, 2015. Ex. A (Dkt. 396-1.) The abstract lists Bentley J. Blum as the person against whom the judgment was entered. Pursuant to 28 U.S.C. § 3201(a), on February 2, 2015, the United States filed the abstract of the judgment in Miami-Dade County, Florida. The United States has not filed any application to execute against any property or sell any specific property in Miami-Dade County.

Blum married Laura Blum, on August 1, 1982. While married, the Blums acquired property in Miami-Dade County, Florida, referred to as the Fisher Island Property, on

---

[1] The Honorable Richard C. Tallman, sitting by designation, heard the Government's motion for Judgment as to Bentley Blum and Blum Real Estate Trust based upon the personal guaranty executed by Mr. Blum. Judge Tallman issued an order on August 26, 2015, denying the Government's motion for a second judgment on the personal guaranty. (Dkt. 410.)

April 15, 1988. Blum Decl. ¶ 4 (Dkt. 390-1). In 2000, the Blums separated. Mrs. Blum, now known as Ms. Utley, currently resides in New York, and apparently has resided there since 1982. Blum resides in Florida, and claims the Fisher Island Property as his residence. Although Blum refers to Utley as his "estranged spouse," and has continuously asserted that Utley's finances are not relevant in this collection action, he and Utley remain married and have never entered into a separation agreement. *See* Mot. to Compel (Dkt. 385 at 2-3); Supp. Blum Decl. ¶ 3-7 (Dkt. 400-1).  Blum has no knowledge of Utley's financial affairs, they do not share bank accounts, and they apparently do not speak to one another unless Utley requests that Blum send her money, which requests are relayed to Blum through his employee, Ms. Kahn. *See* Kahn Depo. at 23-25 (Dkt. 404-1 at 7).[2]

Blum filed the present motion as an election to exempt the Fisher Island property on the grounds that it is property held by joint tenants in the entirety under Florida law,

---

[2] Ms. Kahn testified as follows:
Q. Laura Utley. How often do you speak with her? Either by the phone or by email?
A. Maybe once or twice a week.
Q. Whenever you're in the office. Once or twice a day when you're in the office?
A. Yeah.
Q. Okay. What do you talk about, when she calls?
A. Basically, she calls because she needs money.
***
A. I'll call her back, or I'll text her back, or email her back, or something like that.
Q. When you call Mr. Blum about your conversation with Ms. Utley, how does that go?
A. Usually it's, "What's the deal with Laura this week?" Those are my exact words.
Q. How does he typically respond?
A. He'll say, "Give her whatever amount." Or, "I'll take care of her." Or, "We have nothing, there's nothing I can do. I'll call her."
Q. When he tells you to give her money does he tell you a specific amount?
A. Yes.
Q. Does he tell you from which account to give her money?
A. Usually.

and thus may not be levied upon to satisfy the judgment against him. Blum relies upon 28 U.S.C. § 3014 of the Federal Debt Collection Procedures Act for his argument that the judgment does not constitute a lien against the Fisher Island Property and the Government cannot execute on its judgment against the Fisher Island Property.

The Government contends that Blum is not entitled to an exemption under 28 U.S.C. § 3014 in the Fisher Island Property, because: (1) Blum and Utley separated, thus destroying the unities of possession and survivorship for purposes of claiming a joint tenancy by the entireties under Florida law;[3] (2) Blum's existing rights in the Fisher Island Property satisfy the broad definition of property under 28 U.S.C. § 3002(12); and (3) state law exemptions do not apply to a judgment lien under 28 U.S.C. § 3014(a)(2) because the Government has not filed an application for a remedy. In other words, the Government argues Blum's motion is premature. Alternatively, the Government seeks a ruling from the Court that, if Blum is entitled to an exemption, its judgment lien should be declared to attach to Blum's survivorship interest.

## ANALYSIS

### 1.    Tenancy by the Entirety Under Florida Law

Under Florida law, property is held under tenancy by the entirety if the following six unities or requirements are met:

> (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously);

---

[3] Both parties agree that Florida law applies in this matter to determine Blum's property rights.

> (5) survivorship; and (6) unity of marriage (the parties must be
> married at the time the property became titled in their joint names).

*Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 52 (Fla. 2001). "Should one of these

unities never have existed or be destroyed, there is no entireties estate." *United States v.*

*One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Ave.,*

*Miami, Fla.*, 894 F.2d 1511, 1514 (11th Cir. 1990).

So long as all six unities exist, property held as a tenancy by the entirety is not

subject to disposal or alienation by either spouse alone, nor is the property subject to the

debts of either spouse, because neither spouse is recognized as having any separate right.

*Sheldon v. Waters*, 168 F.2d 483, 484 (5th Cir. 1948). Because of the sixth characteristic –

unity of marriage – a tenancy by the entireties is a form of ownership unique to married

couples. *Beal Bank*, 780 So.2d at 52. When a married couple holds property as a tenancy

by the entireties, each spouse holds the whole, and not a share or divisible part. *Id.* at 53.

In other words, the property belongs to neither spouse individually, but each spouse is

seized of the whole. *Id.* This characteristic prevents creditors of only one spouse from

attaching the tenancy by the entireties property, because the property is not divisible on

behalf of one spouse alone, and therefore cannot be reached to satisfy the obligation of

only one spouse. *Id. See also United States v. Craft*, 535 U.S. 274, 281 (2002) (explaining

that unilateral alienation of a spouse's interest in entireties property is not possible

without severance). Under Florida law, there is a presumption that ownership of real

property in the name of both spouses vests title in them as tenants by the entireties in the

absence of express language showing a contrary intent. *Id.* at 54-55.

**REPORT AND RECOMMENDATION - 5**

Tenancy by the entirety may be terminated in a variety of ways. Divorce, death of one of the owners, or an express agreement between the owners may terminate the tenancy by the entirety. *Passalino v. Protective Group Securities, Inc.*, 886 So.2d 295, 297 (Fla. Dist. Ct. App. 2004); *Craft*, 535 U.S. at 281 (a tenancy by the entirety "cannot easily be severed unilaterally…Typically, severance requires the consent of both spouses or the ending of the marriage.").

The Government relies upon *Sheldon v. Waters*, 168 F.2d 483 (5th Cir. 1948),[4] for its argument that the Court should infer an agreement between Blum and Utley terminating the tenancy by the entireties in the Fisher Island Property because of their long separation and estrangement. However, the Government's reliance upon *Sheldon* is misplaced. In *Sheldon*, the wife filed a proof of claim in her husband's bankruptcy case claiming an interest in proceeds from the sale of real property held as a tenant by the entirety with her husband. Apparently, the husband's new business venture caused the husband to draw heavily upon the couple's joint bank account, unbeknownst to the wife. When the wife learned of the husband's financial indiscretions, the couple decided to sell a piece of Florida real estate held as tenants by the entirety, divide the proceeds into separate bank accounts, and each use the money for their separate business ventures.

---

[4] The Government cites *Passalino* as support for its argument. However, the reference to *Passalino* is incorrect, because the passage cited discusses the holding in *Sheldon*. *Passalino* stands for the proposition that a judgment creditor of one spouse cannot reach proceeds from the sale of real property held as a tenancy by the entireties even though the proceeds were deposited in an attorney's trust account. *Passalino*, 886 So.2d at 297. In other words, the proceeds from the sale retained their character as entireties property.

**REPORT AND RECOMMENDATION - 6**

The bankruptcy referee[5] concluded that the acts of the bankrupt[6] and his wife established an implied agreement to terminate the estate by the entirety in the real property, and the proceeds from the sale that the husband received after he and his wife divided the cash constituted the separate property of the debtor, to be administered by the trustee to his creditors. *Sheldon*, 168 F.2d at 484. The appellate court agreed, concluding that the course of conduct resulting in the sale of the real property and the division of the proceeds by husband and wife, for their separate use, resulted in an implied agreement to terminate the tenancy by the entireties in the cash proceeds from the sale of the real property. *Id*. at 484-485. But, the court explained that, until there was a division of the proceeds and use of the proceeds by the husband and wife inconsistent with a tenancy by the entireties, the creditors had no claim against the real property or the proceeds from the sale of the same. *Id.* at 486.

In *Valentine v. Van Sickle*, 42 So.3d 267 (Fla. Dist. Ct. App. 2010), the court considered whether a couple's separation prior to finalization of their divorce destroyed a tenancy by the entireties in the couple's marital home. The parties separated in April of 2006, and the final dissolution of marriage was not entered until December of 2008. The husband claimed he should receive a credit against the retroactive alimony he was ordered to pay for the mortgage payments he made during the parties' separation. The

---

[5] Prior to enactment of the Bankruptcy Code and the creation of bankruptcy judges by Congress, the Bankruptcy Act referred matters to referees to decide matters arising under bankruptcy law.

[6] Prior to the enactment of the Bankruptcy Code, a debtor was referred to as "the bankrupt."

**REPORT AND RECOMMENDATION - 7**

court disagreed, holding that "[p]rior to the final judgment of dissolution, the marital residence was held by the entireties." *Valentine*, 42 So.3d at 275.

It appears the Court may look also to equitable principles to terminate a tenancy by the entireties by the implied conduct of the parties, but there must be more than just marital separation. *See United States v. One Single Family Residence*, 894 F.2d at 1515 n.2 (citing cases finding termination of a tenancy by the entireties). For example, in *Eichman v. Paton*, 393 So.2d 655, 656-7 (Fla. Dist. Ct. App. 1981), Charles and Cora owned real property in Florida as tenants by the entireties. Six years after the marriage, the couple separated, and the husband continued to live in the marital home in Florida. Four years later, the wife filed for divorce. But, before the divorce could become final, the husband attempted to kill his wife by striking her on the head, rendering her incapable of managing her own affairs and bringing an end to the divorce proceedings. The wife's guardian moved to partition the real property.

The court granted the petition, relying not on the parties' long separation, but upon the husband's felonious act of attempted murder as the act that destroyed the marriage relationship. *Eichman*, 393 So.2d at 656. The court explained that, by frustrating the divorce litigation, the parties remained tenants by the entirety with the right of the husband to inherit the entire property upon his wife's death, and under those circumstances, "equity has it within its power to grant relief." *Id.*

Finally, the Court reviewed *Snow v. Mathews*, 190 So.2d 50 (Fla. Dist. Ct. App. 1966), involving the death of two spouses holding real property as tenants by the entireties. In that case, the spouses entered into a written separation agreement prior to

**REPORT AND RECOMMENDATION - 8**

their deaths expressly providing that their home would be sold and the net amount received divided equally. The agreement provided the wife could continue to live in the home until required to move as a result of the sale. The husband later died. Upon his death, his daughter executed a contract for sale of the property. Before the sale could be consummated, the wife died. The wife had appointed another daughter to administer her estate.

Based upon the couple's agreement prior to their deaths, the court held that the written separation agreement was intended to be a complete and final distribution of the parties' residence, and effectively terminated the estate by entirety, entitling each spouse to an equal division of the proceeds of the sale of the property. *Snow*, 190 So.2d at 52. The court thereafter ordered the property sold to the prospective purchasers, and the proceeds divided between the two estates. *Id*.

Here, the Government relies solely upon the parties' long term separation to imply that Blum and Utley intended to terminate the tenancy by the entireties in the Fisher Island Property. Neither party disputes the presumption of tenancy by the entireties arises in the Fisher Island Property. But it does not appear that, from the parties' mere separation alone, the Government can invoke an implied agreement to terminate the tenancy by the entireties in the Fisher Island Property. The case law relied upon by the parties requires more, such as a felonious act as in *Eichman*, or the sale of the property and explicit division of the proceeds, like in *Sheldon*. But mere separation, as occurred in *Valentine*, and concurrent exclusion of one spouse from the marital home during divorce proceedings, did not destroy the tenancy by the entireties in a marital home.

**REPORT AND RECOMMENDATION - 9**

Here, there has been no divorce proceeding, and no property division agreement by either Utley or Blum, express or implied; it appears that the couple maintains some sort of relationship, however unconventional. Utley continues to share in Blum's financial affairs by asking for money, with Blum providing funds when she asks. That neither tells the other what they might be doing with the funds is a factor here, but not a definitive factor affecting title held in the real property.

Until the severance of the marriage relationship or the sale of the property with a concurrent intent to exercise independent control of the proceeds inconsistent with retention of the character of such proceeds as entireties property, this Court, under the above authorities, recommends a finding that the Fisher Island Property currently is held by Utley and Blum as tenants in the entireties.[7] Consequently, the property is immune from execution by Blum's creditors. *See In re Campbell*, 214 B.R. 411 (Bankr. M.D. Fla. 1997) (absent judgment against both husband and wife, the court sustained Chapter 7 debtor's exemption in entireties property under Florida law); *see also* 28 U.S.C. § 3010(a) ("The remedies available to the United States under this chapter may be enforced against property which is co-owned by a debtor and any other person only to the extent allowed by the law of the State where the property is located.").

---

[7] The Court's finding is limited to the situation as it exists today. Further, the Court is aware that, on the eve of entering its report and recommendation, the Government filed a notice that Blum has commenced an action against the United States in the United States District Court for the Southern District of Florida regarding title to the Fisher Island Property. (Dkt. 411.) The matter before the Court arises under the FDCPA, and the Court was not asked to address, nor does this Report and Recommendation resolve, the specific issues pending before the Florida District Court.

**REPORT AND RECOMMENDATION - 10**

2.       **Federal Debt Collection Procedures Act**

Next, the Government argues that, even if the Court finds Blum has a tenancy by the entirety interest in the Fisher Island Property, his rights in the real property constitute "property" under the FDCPA such that the Government's lien attaches to those rights and Blum cannot claim an exemption under the FDCPA. The Government points to Blum's right of survivorship, which gives Blum a potential future interest, as well as to Blum's present interests encompassing the right to use the real property, share in income from the property, and exclude others from the property. Blum disagrees, relying upon 28 U.S.C. § 3014(a) and distinguishing *Craft*, upon which the Government relies. Blum asserts an exemption in the Fisher Island Property under 28 U.S.C. § 3014(a)(2).

Section 3014(a) of the FDCPA provides, in pertinent part, that:

An individual debtor may, <u>in an action or proceeding</u> under this chapter, <u>elect to exempt property</u> listed in either paragraph (1) <u>or,</u> in the alternative, paragraph (2). If such action or proceeding is against debtors who are <u>husband and wife,</u> one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2). <u>If the debtors cannot agree</u> on the alternative to be elected, they <u>shall be deemed to elect paragraph (1)</u>. Such property is either--
      (1) property that is specified in section 522(d) of title 11, as amended from time to time;[8] <u>or</u>
      (2)(A) any <u>property that is exempt</u> under Federal law, other than paragraph (1), <u>or State or local law</u> that is applicable on the date of the filing of the application for a remedy under this chapter at the place in which the debtor's <u>domicile has been located for the 180 days immediately</u>

---

[8] 11 U.S.C. § 522(d) is the list of federal exemptions under the Bankruptcy Code. With regard to real property, the Code permits a debtor to claim as exempt his aggregate interest, not to exceed $22,975 in value, in real property or personal property that the debtor…uses as a residence…." 11 U.S.C. § 522(d)(1). The dollar amount is adjusted periodically pursuant to 11 U.S.C. § 104, and for cases commenced after April 1, 2013, was set at $21,625.

**REPORT AND RECOMMENDATION - 11**

> preceding the date of the filing of such application, or for a longer portion
> of such 180-day period than in any other place; and
>          (B) any interest in property in which the debtor had, immediately
> before the filing of such application, an interest as a tenant by the entirety
> or joint tenant, or an interest in a community estate, to the extent that such
> interest is exempt from process under applicable nonbankruptcy law.

(emphasis added).

The Government explains that Blum's tenancy by the entirety interest in the Fisher Island Property constitutes "property" under the FDCPA. State law defines an individual's interest in property, while courts look to the federal law at issue to determine if those rights qualify as "property" under federal law. *Craft*, 535 U.S. at 278-79. Under Florida law, a tenancy by the entirety provides individual spouses with the following rights: the right of survivorship; the right to control the use of the property and to exclude others; the right to enjoy income produced from it; and the inability to unilaterally alienate or encumber the property without mutual consent. *Craft*, 535 U.S. at 281-82.

In *Fischre v. United States*, 852 F.Supp. 628, 630 (W.D. Mich. 1994), the court examined whether the United States' judgment lien could attach to entireties property under Michigan law. There, the court held that under Michigan law, a judgment lien based on the sole obligation of one spouse "may legitimately attach to the spouse's individual survivorship interest in entireties property without illegitimately burdening the entireties estate or the other spouse's interests therein." *Fischre*, 852 F.Supp. at 630. But, the court further held that the judgment lien "must be declared a nullity insofar as it might appear to attach to and encumber plaintiffs' enjoyment of their entireties estate." *Id.* Thus, while the lien did attach to the debtor-spouse's individual interest, and could

**REPORT AND RECOMMENDATION - 12**

remain on record in the recorder's office for that "limited purpose," the judgment creditor could not satisfy its lien until termination of the entireties estate by the death of the non-debtor spouse. *Id. See also Craft*, 535 U.S. at 288 (holding that debtor spouse's interest in entireties property under Michigan law constituted property or rights to property for purposes of the federal tax lien statute).

The FDCPA defines property as including "any present or future interest, whether legal or equitable, in real … property…vested or contingent, wherever located and however held." 28 U.S.C. § 3002(12). The Court agrees with the Government that "property" under the FDCPA is defined broadly, and encompasses Blum's right of survivorship, which is contingent upon Utley predeceasing him. However, under the persuasive authority of *Fischre*, the judgment lien does nothing more than act as a place holder, and it cannot be satisfied until termination of the entireties estate. Until such time, while the lien attaches to the future interest, the judgment lien cannot attach to and presently encumber the entireties estate. *See also* 28 U.S.C. § 3010(a) ("The remedies available to the United States under this chapter may be enforced against property which is co-owned by a debtor and any other person only to the extent allowed by the law of the State where the property is located.").

The question of whether the property is exempt under 28 U.S.C. § 3014(a)(2), however, is premature. First, section 3014 is not triggered unless an action or proceeding has commenced "under this chapter," which specifically refers to proceedings under the FDCPA. 28 U.S.C. § 3014(a). The Government has not served a complaint, writ, notice

or other process under the FDCPA seeking satisfaction of its judgment. *See* 28 U.S.C. § 3004.[9]

Blum argues that, contrary to the Government's assertion, his election is not premature, because he is seeking an election for exemption under 28 U.S.C. § 3014(a)(2)(B), not (a)(2)(A), which does not reference the commencement of a proceeding. However, Blum's reading of the statute is incorrect. Section 3014(a)(2)(A) and (B) are written in the conjunctive, using the word "and." The election is not made under 28 U.S.C. § 3014(a)(2)(A) *or* 3014(a)(2)(B). The statute explains the choice is between 28 U.S.C. § 3014(a)(1) or (a)(2). 28 U.S.C. § 3014(a). If Blum's interpretation is accepted, there would be three, rather than two, election choices, and that clearly is not what section 3014(a) states ("an individual debtor may…elect to exempt property listed in either paragraph (1) or, in the alternative paragraph (2).").

Thus, Blum's election is made under section 3014(a)(2), and both subsection (A) and (B) must be satisfied for Blum to claim an exemption. Subsection 3014(a)(2)(A) requires that there be an "application for a remedy under this chapter" before an election may be made.[10] Applications for a post judgment remedy include those mentioned in Subchapter C of the FDCPA (28 U.S.C. §§ 3201-3206), and require the United States to commence an action or proceeding to obtain a remedy. *See* 28 U.S.C. § 3202. All such

---

[9] Upon receipt of such a notice or other process, the debtor may request a transfer of such proceedings to the district in which he resides. 28 U.S.C. § 3004(b)(2).

[10] Blum concedes that if he "was making an election to exempt the Fisher Island Property under § 3014(a)(2)(A)," the Government's position that the election under § 3014(a)(2) is asserted too early "might be true." Blum's reply at 7-8 (Dkt. 400 at 7-8).

**REPORT AND RECOMMENDATION - 14**

actions require the United States to have the clerk of court issue a notice to the judgment debtor, which notice explains how the debtor may request a hearing to explain why the property is exempt. *Id.* The Court is then instructed to examine the state law applicable on the date of filing of the application at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of such application to determine whether the debtor may claim an exemption. 28 U.S.C. § 3014(a)(2)(A). In other words, there is a 180 day "look back" period, commencing upon the date of the filing of the application for a remedy, within which the court examines state law to determine the exempt status of the property subject to execution and sale.

Here, the Government has not filed an application for a remedy under any section contained within Subchapter C of the FDCPA. Therefore, it is premature for Blum to seek a ruling from this Court that the Fisher Island Property is exempt. Thus, despite the Court's determination that, as of the date of this report and recommendation, the tenancy by the entireties relationship has not been destroyed with respect to the Fisher Island Property, the facts may be vastly different if and when the Government does apply for a remedy under the FDCPA given the 180 day look back period.

## CONCLUSION

The Court finds Blum's assertion of an election to exempt property under 28 U.S.C. § 3014(a)(2) is premature, because the Government has not filed an application for a post judgment remedy under Subchapter C of the FDCPA. All it has recorded is an abstract of judgment in Miami-Dade County, Florida. The Court further finds that, in

**REPORT AND RECOMMENDATION - 15**

these proceedings, the Government has not overcome the presumption that the Fischer

Island Property is held by Utley and Blum as tenants in the entirety, and that presently,

the entireties estate is intact. Accordingly, the Government may retain its lien in whatever

future rights Blum presently holds, but the lien may not encumber plaintiffs' enjoyment

of their entireties estate unless and until the entireties estate is terminated under Florida

law.


<u>**RECOMMENDATION**</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      Blum's Election of Exempt Property and Application for Hearing to

        Determine Property and/or Exempt Property (Dkt. 390) be **DENIED**.

        Written objections to this Report and Recommendation must be filed within
fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or
as a result of failing to do so, that party may waive the right to raise factual and/or legal
objections to the United States Court of Appeals for the Ninth Circuit.


Dated: September 04, 2015

Honorable Candy W. Dale
United States Magistrate Judge


**REPORT AND RECOMMENDATION - 16**